URBAN CONTRACTORS ALLIANCE OF ST. LOUIS et al., Appellants,

v.

BI–STATE DEVELOPMENT AGENCY et al., Appellees.

No. 75–1092.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1975.

Decided Feb. 20, 1976.

William I. Rutherford, Clayton, Mo., for appellees.

William I. Rutherford, John Fox Arnold, Kenneth C. Brostron, St. Louis, Mo., for appellees Bi-State Development Agency, Bi-State Transit System, James E. Terry, Fred D. Beuckman, William Dothit, Roy J. May, Edwin B. Meissner, Jr., Carmen Moody, Mrs. William G. Phillips, Macler C. Shepard and Ralph Walker.

Donald J. Stohr, U. S. Atty., and Jean C. Hamilton, Asst. U. S. Atty., St. Louis, Mo., for appellee, Secretary of the Dept. of Transp.

Donald J. Stohr, U. S. Atty., St. Louis, Mo., amicus curiae, Dept. of Transp.

Elbert Dorsey and Charles L. Bussey, Jr., St. Louis, Mo., for appellants.

Before CLARK, Associate Justice, Retired,* LAY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This action was brought to correct alleged racial inequality in the administration of bus service in St. Louis and its Illinois and Missouri suburbs. In the trial court, defendants' motions for summary judgment and dismissal of the complaint were granted and plaintiffs appeal those dispositions. We conclude that the federal district court had no jurisdiction over the cause stated, and dismissal was necessary for that reason.

The plaintiffs, who are appellants here, are Urban Contractors Alliance of St. Louis and members and board members of that organization, Mo-Kan Minority Contractors Association, Bi-State Committee on Racial Equality, Charles Q. Troupe, and Tom Richards Construction Company. According to their first amended complaint, "Plaintiffs are Negro employees, beneficiaries, participants and users of the Bi-State Transit System and potential construction contractors with the [Bi-State Development] Agency." They are not identified further in the complaint; however, it appears from the record that plaintiffs Mo-Kan and Urban Contractors are associations of minority contractors and plaintiff Tom Richards Construction Company is headed by a black man, Tom Richards. Richards is also a busdriver for Bi-State Transit System, as is plaintiff Charles Q. Troupe, who is also black. Troupe is also affiliated with plaintiff Bi-State Committee on Racial Equality, which is apparently an association founded to combat racial and other discrimination by the Bi-State Development Agency. The plaintiffs also asserted representation of a class under Fed.R.Civ.P. 23.

The defendants are Claude Brinegar as Secretary of the Department of Transportation, Bi-State Development Agency and Bi-State Transit System, the transit system's manager, and Bi-State Development Agency's Chairman and Board of Commissioners. Bi-State Development Agency is a body created pursuant to an interstate compact between Missouri and Illinois. One of the functions it performs is the operation of a public bus system in the greater St. Louis area. See Ladue Local Lines, Inc. v. Bi-State Development Agency, 433 F.2d 131 (8th Cir. 1970). Bi-State Transit System is the name given this bus system, but it has no legal existence separate and apart from Bi-State Development Agency.

Plaintiffs alleged violations of 42 U.S.C. §§ 1981, 1983 and 2000d in their first amended complaint, and set forth 28 U.S.C. §§ 451, 1343, 1345 and 2201 as their jurisdictional bases.

Several acts of alleged illegal discrimination are attributed to Bi-State Development Agency by the plaintiffs. First, they allege that better, more efficient bus service is provided to white neighborhoods than black. Second, that the Agency does not "solicit" or "allow" minority contractors to bid on contracts for goods or services. Third, it is alleged that the Agency discriminated against minority employees in seniority and work assignments, and that employees who have been active in the civil rights area have been discouraged and discriminated against. It is further alleged that Secretary Brinegar, through the Urban

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

Mass Transportation Authority, has made grants to Bi-State Development Agency without insuring that the agency did not discriminate in the area of civil rights.

The plaintiffs' seek to enjoin the alleged discriminatory acts and to enjoin further federal assistance under the Urban Mass Transportation Act, 49 U.S.C. § 1601 et seq., until the Secretary and Bi-State Development Agency have complied with their respective responsibilities under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. See generally, 49 C.F.R. part 21.

The suit was originally filed on June 13, 1974. On August 16, a hearing was held on the motions of the private parties defendant for summary judgment and to dismiss, and on October 29, 1974, the plaintiffs filed their first amended complaint. On November 6, 1974, the court granted the motion of the Secretary to dismiss the complaint against him on two grounds. The court held that the plaintiffs had "failed to allege a valid basis for jurisdiction over the subject matter of this action against any federal agency or official"; and that they had failed to exhaust the administrative remedies set forth in 49 C.F.R. part 21. On December 20, 1974, the motion of the Bi-State Development Agency defendants [1] for dismissal of the complaint of all plaintiffs except Troupe was granted, on the basis that these plaintiffs had failed to exhaust

administrative remedies. The district court also granted summary judgment to the remaining defendants against plaintiff Troupe. The court found that Troupe had sought administrative relief, and it was granted. Noting that Troupe had not asked to have that administrative determination reviewed, the court found summary judgment to be proper.

We do not reach the question of the propriety of the district judge's dispositions, but reach substantially the same result for another reason. See Kuhn v. National Association of Letter Carriers, 528 F.2d 767, at 770, n.4 (8th Cir. 1976).

Neither the first amended complaint nor the record in this case allege or show that the plaintiffs have themselves been injured by the allegedly illegal conduct of the defendants.[2] Instead the complaint alleges that the wrongful acts of the defendants have injured "residents of the Negro neighborhoods", "Negro and minorities, low income and unemployed", "the Black community in North St. Louis", "the elderly and handicapped", "minority contractors" and the like. There are no allegations that any of the named plaintiffs were injured or are within these groups, nor that any of the injured persons are members of the plaintiff associations: Urban Contractors Alliance, Mo-Kan Minority Contractors Association, or Bi-State Committee on Racial Equality.[3]

---

1. One of the defendants was not included in the orders of December 20. This was apparently an oversight, and identical relief was granted as to him on January 6, 1975.

2. The only portion of the amended complaint which attempts to establish a nexus between the alleged acts and the plaintiffs in this lawsuit is paragraph 12:

The Agency, has violated the regulations CFR Title 49, subtitle A, Part 21, Subsection 21.5 pursuant to Title 6 [of the Civil Rights Act of 1964] by:
a. denying plaintiffs services, financial aid, and other benefits provided under the Urban Mass Transportation Act of 1964, as amended;
b. by providing services, financial aid and benefits to whites that is different or is provided in a different and discriminatory manner;

c. receiving funds provided under the Urban Mass Transportation Act has denied Negro plaintiffs an opportunity to participate in the programs through the provision of services or otherwise afford them an opportunity to do so or has provided an opportunity in a manner that is different from that afforded others and whites under the Urban Mass Transportation funded programs;
d. further the Agency has through contractual and other arrangements, utilized criteria or methods of administration which have the effect of subjecting plaintiffs to discrimination because of their race.
These vague and conclusory allegations do not give us any inkling of how any of the plaintiffs have suffered injury.

3. We have not stopped at the allegations in the pleadings, but have conducted an exhaustive search of the record for anything which would

This failure of the plaintiffs to allege that they were injured was argued in the court below as well as in this court. They amended their complaint after their standing was challenged and seek to amend again here, but they have never attempted to allege that they have been personally injured by defendants' conduct. Instead they apparently believe that the statutes under which they bring this action allow them to maintain suit without a personal stake therein.[4]

■ It seems that plaintiffs have not grasped the distinction between constitutional and prudential standing. While it is true that the latter may be supplied by Congress where it would otherwise be lacking, Article III standing may not. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *O'Shea v. Littleton*, 414 U.S. 488, 493, n.2, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Article III, § 2 of the Constitution limits our jurisdiction to cases or controversies, and an aspect of this requirement is the standing of the plaintiff.

In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. (Emphasis in original.)

*Warth v. Seldin, supra,* 422 U.S. at 498–499, 95 S.Ct. at 2205.

■ The test of constitutional standing has been variously expressed as "real and immediate injury" to the plaintiff, *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561, 44 U.S.L.W. 4095, 4098 (1976), "a distinct and palpable injury to himself", *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206, or "injury in fact", *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 218, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). But under any articulation of the standard it is fundamental that the plaintiff himself must have suffered the injury he seeks to redress. For if the plaintiff has not "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions * * *", *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), no "case or controversy" is presented.

■ Neither the complaint nor the record contain allegations showing that any of the plaintiffs themselves have been injured by defendants. Although an association may maintain suit for its members, this is only true where the members have suffered some injury at defendants' hands. *Warth v. Seldin, supra,* 422 U.S. at 511, 95 S.Ct.

show that any of the plaintiffs have suffered an injury by defendants' actions. The only allegation which would arguably support such an inference is a statement made by Mr. Tom Richards, of plaintiff Tom Richards Construction Company, at a public hearing on transit improvement held May 6, 1974. Richards indicated he had written to Bi-State Development Agency asking to be included on a bidder's list, and, although he had been assured his name would be placed on the list, he had never received notification that he was actually on the list. In a letter to the Urban Mass Transit Authority Office of Civil Rights, written May 17, 1974, the Agency indicated that no such contracts had been bid within the previous five years, but if and when they were the Agency would comply with DOT guidelines relating to the hiring of minority contractors. This rather inconclusive and isolated statement in an administrative hearing some six months before the amended complaint was filed is insufficient to constitute a jurisdictional basis for this lawsuit. *Compare Sierra Club v. Morton,* 405 U.S. 727, 735, n.8, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

4. At the hearing on motions held August 16, 1974, counsel for plaintiffs stated: "My reading of [*Sierra Club v. Morton, supra,* n.3], to me, that it is not necessary for us to allege a personal stake because we're relying on other statutes, Your Honor." Transcript at 25.

2197; *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Plaintiff associations here do not assert that this is the case.

 If we accept the allegations of the complaint as true, and if we construe its allegations favorably to the complainants, as suggested by *Warth v. Seldin, supra*, 422 U.S. at 501, 95 S.Ct. 2197, it would appear that blacks and other minorities have suffered from discriminatory actions of the defendants.[5] However, the plaintiffs have shown no more than that they share some attributes common to persons who may have been illegally discriminated against. *See Warth v. Seldin, id.* at 502, 95 S.Ct. 2197. Thus they are no more than "concerned bystanders". *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). Nor may they proceed as representatives of the injured class if they have suffered no injury themselves. *Schlesinger v. Reservists Committee to Stop the War, supra*, 418 U.S. at 216, 94 S.Ct. 2925.

The plaintiffs ask the courts to withhold several thousand dollars in federal assistance which is earmarked for the improvement of public transportation in the St. Louis area, alleging serious infringements of basic civil rights by an agency of two sovereign states. Obviously the ramifications of federal court interference here could be far-reaching and grave. In such a case the wisdom of the drafters of the Constitution in requiring a case or controversy for the invocation of federal judicial power is apparent. We should not undertake the adjudication of such important questions unnecessarily, or in the absence of the essential specificity which results from requiring that plaintiffs have suffered a particular injury from the challenged action. *Schlesinger v. Reservists Committee to Stop the War, supra*, 418 U.S. at 221, 94 S.Ct. 2925. Furthermore, in the absence of a factual setting demonstrating concrete injury to these plaintiffs we could not be sure that any relief granted would be appropriately tailored to correct the alleged discrimination. *Id.* at 222, 94 S.Ct. 2925.

We hold that plaintiffs have failed to allege a case or controversy and therefore the federal district court was without jurisdiction in this case. The order of dismissal is affirmed.

---

5. In applying this standard of review, we of course do not intend to express any view as to the merits of the case.