476 F.Supp. 896 (1979)
Earl JACKSON, and Ad Hoc Committee to Save Homer G. Phillips Hospital, Frank Chapman, Co-Chairperson, et al., Plaintiffs,
v.
James F. CONWAY, Individually and as Mayor of the City of St. Louis, et al., Defendants.
No. 79-966C(1).
United States District Court, E. D. Missouri, E. D.
September 5, 1979.
*897 *898 William P. Russell, Joseph S. McDuffie, St. Louis, Mo., for plaintiffs.
Peter H. Ruger, Thomas J. Ray, Anne C. Travis, St. Louis, Mo., David R. Spitznagel, Clayton, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court upon plaintiffs' motion for a preliminary injunction. Plaintiffs are thirteen (13) individuals, a church, and an unincorporated association. It is alleged that the individual plaintiffs are predominately black residents of North St. Louis who have used, are using, or will use Homer G. Phillips Hospital in the future. Some of the individual plaintiffs are recipients of Medicare, Medicaid and other federal disability payments used to pay for medical care. The remaining plaintiffs are St. Paul A.M.E. Church and the Ad Hoc Committee to Save Homer G. Phillips Hospital and all public hospitals, whose members associated together for the purpose of representing the interests of indigent citizens of St. Louis, including residents of North St. Louis, who require the use of Homer G. Phillips Hospital.
Defendant James F. Conway is the Mayor of the City of St. Louis, Missouri, and its chief executive and administrative officer. Defendant Dr. Helen Bruce is Commissioner of Hospitals of the City Hospitals and has general supervision over public health programs. Defendant R. Dean Wochner is Director of Health and Hospitals of the City of St. Louis and his duties include the management, control and supervision of all business of the department of health and hospitals. Defendant John Noble is Administrator for City Hospital No. 1 of the City of St. Louis Missouri. Defendant Board of Estimate and Apportionment, and its individual members, James F. Conway, Mayor, Paul Simon, President, Board of Aldermen and Raymond T. Percich, Comptroller, is the chief fiscal body of the City of St. Louis, Missouri, and has general supervision of the budget of the hospitals of the City of St. Louis. Defendant St. Louis University School of Medicine and defendant Washington University School of Medicine both contract with the City of St. Louis, Missouri, to operate certain of its hospitals, facilities and programs which receive federal *899 financial assistance. Defendant Institute of Medical Education & Research is primarily responsible for the recruitment of students and doctors at City Hospital No. 1. Defendant Patricia Harris is the Secretary of Health, Education and Welfare of the United States of America, and has responsibility for all federal programs administered by the Department.
Plaintiffs filed their original complaint on August 8, 1979, seeking a class action certification and declaratory relief. No temporary restraining order was sought. On August 17, 1979, plaintiffs filed an amended complaint requesting a preliminary injunction against the City defendants and the Secretary. A hearing on the motion for a preliminary injunction was held August 27th through August 30th, 1979.
In essence, plaintiffs' amended complaint alleges that the closing of acute in-patient facilities and certain emergency room and out-patient facilities (hereinafter denominated solely as acute in-patient facilities) at Homer G. Phillips Hospital (hereinafter "Phillips" or City Hospital No. 2) and the consolidation of those services at City Hospital No. 1 or Max Starkloff (hereinafter City Hospital No. 1 or Starkloff) is violative of the Fifth and Fourteenth Amendments, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.
The only matter to be presently decided is plaintiffs' motion for a preliminary injunction. Jurisdiction of this Court is principally based upon 28 U.S.C. §§ 1331, 1343 and 1361.
The first issue which must be decided is whether or not plaintiffs have alleged an adequate basis for standing to assert their claims. With respect to the individual plaintiffs, the predominant allegation in this regard is that plaintiffs will require use of Phillips in the future and are unable because of their poverty or other reasons to bear the additional burden of traveling from Phillips to City Hospital No. 1. None of the plaintiffs here has alleged seeking and being denied treatment at City Hospital No. 1 nor have the plaintiffs alleged that treatment at City Hospital No. 1 would be inadequate due to the effects of consolidation. As a corollary to the standing issue, the nature of the injury alleged bears directly on plaintiffs' ability to allege a justiciable case on controversy. Both of these issues will be considered. In Urban Contractors Alliance v. Bi-State Development Agency, 531 F.2d 877 (8th Cir. 1976). The Eighth Circuit stated that:
. . . it is fundamental that the plaintiff himself must have suffered the injury he seeks to redress. For if the plaintiff has not `alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions . . .', Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), no `case or controversy' [has been] presented.
Id. at 881.
. . . [i]n the absence of a factual setting demonstrating concrete injury to these plaintiffs we could not be sure that any relief granted would be appropriately tailored to correct the alleged discrimination.
Id. at 882.
To be sure, the logical nexus between proximity and injury is more attenuated here than the injury in most disparate impact cases, wherein the otherwise neutral factor challenged operates to completely and automatically excluded a certain percentage of the minority plaintiffs. In the opinion of this Court, however, a justiciable case or controversy has been presented.
To satisfy the standing requirement, a litigant must allege "that the challenged action has caused him injury in fact, economic or otherwise", and that "the interest sought to be protected by the complainant is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question". Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152, *900 153, 90 S.Ct. 827, 829, 830, 25 L.Ed.2d 184 (1970).
The matter is complicated somewhat by the fact that certification of plaintiffs' class has not yet been sought. It appears to the Court, however, that the representatives of the class must themselves satisfy the standing requirement without regard to similar "attributes common to persons who may have been illegally discriminated against" but who are not before the Court. Warth v. Seldin, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1972); Urban Contractors Alliance v. Bi-State Development Agency, 531 F.2d 877, 882 (1976).
This Court has decided to proceed with plaintiffs' claims regardless of its doubt as to whether or not plaintiffs have standing to maintain the claims because of (1) the nature and importance of the right asserted; and (2) the fact that the standing issue appears to be inextricably bound up with the injury or discrimination alleged. With respect to (1) above, the Supreme Court has stated that "medical care is . . `a basic necessity of life.'" Memorial Hospital v. Maricopa County, 415 U.S. 250, 259, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306 (1974). Although a municipality is not constitutionally required to provide a particular quantity or quality of health services, when a municipality receives federal financial assistance pursuant to a municipal program both Title VI and the Rehabilitation Act of 1973 require that the service or program involved be provided in a non-discriminatory manner. 42 U.S.C. § 2000d sets forth the general purpose of Title VI by stating that:
No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
29 U.S.C. § 794 sets forth the similar purposes of the Rehabilitation Act of 1973:
No otherwise qualified handicapped individual in the United States, as defined in § 706(6) of this Title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.
With respect to number (2) above, site selection of the consolidated hospitals' acute in-patient services is the major focus of plaintiffs' attempt to show discrimination. The rights asserted by the plaintiffs may arguably fall within the zone of interests to be protected by the statutes in question if plaintiffs can show they have suffered such an impediment through the relocation of acute in-patient services and their resultant proximity that the resultant relocation and proximity amount to a denial of care at City Hospital No. 1. Such a showing also relates to plaintiffs' ability to demonstrate concrete injury. In the opinion of this Court, given the nature of the right asserted and the necessity of proceeding on the merits to determine the nature and extent of the injury alleged, plaintiffs have alleged sufficient injury to satisfy the concept of standing. United States v. SCRAP, 412 U.S. 669, 683-690, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152-156, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).
The standards for the issuance of a preliminary injunction are as follows: (1) Plaintiff must make a clear showing of probable success on the merits and possible irreparable injury, or (2) plaintiff must show that there are sufficiently serious questions going to the merits making them a fair ground for litigation and a balance of hardships tipping decidedly towards plaintiff. Fennell v. Butler, 570 F.2d 263, 264 (8th Cir. 1978), cert. denied 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978); Dakota Wholesale Liquor, Inc. v. Minnesota, 584 F.2d 847 (8th Cir. 1978); Sonesta Int'l Hotels Corp. v. Wellington Assocs., 483 F.2d 247, 250 (2d Cir. 1973); See also Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 254, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).
*901 The injunctive relief sought against Patricia Harris, Secretary of H.E.W., is an injunction compelling her agency to "make a full and complete investigation of the health and hospital delivery system as required under Title VI, 42 U.S.C. § 2000d et seq. and regulations pursuant thereto". 42 U.S.C. § 2000d has been previously set out in this Memorandum. 42 U.S.C. § 2000d-1 provides for the issuance of regulations by federal agencies to achieve the objectives of the Act. The section further authorizes agencies to effect compliance with the Act's requirements by the termination or refusal to grant or continue federal financial assistance following certain findings by the agency, provided voluntary compliance is not able to be achieved. 42 U.S.C. § 2000d-2 provides that an agency action taken pursuant to § 2000d-1 is subject to judicial review under the Administrative Procedure Act. This has been interpreted to include agency actions both terminating and refusing to terminate federal financial assistance.
It is apparent to this Court from the above described provisions that plaintiffs are premature in requesting a termination of federal financial assistance before an investigation has ever been conducted by the Secretary. Exhaustion of administrative remedies is a prerequisite to suit for the termination of funding to an agency covered under Title VI, e. g., Caulfield v. Board of Education, 583 F.2d 605 (2d Cir. 1978); Santiago v. City of Philadelphia, 435 F.Supp. 136 (E.D.Pa.1977); Cf. School Dist. of Saginaw v. United States Department of Health, Education and Welfare, 431 F.Supp. 147 (E.D.Mich.1977); See also N.A.A.C.P. v. Wilmington Medical Center, Inc., 426 F.Supp. 919, 924 (D.Del.1977), and cases cited therein.
Plaintiffs have only just submitted complaints to the Secretary in the past thirty (30) days. The complaint submitted on March 5, 1979 was submitted by the office of Legal Services of Eastern Missouri, Inc. and not by any of the plaintiffs. Plaintiffs allege that on June 20, 1979, in response to the complaint filed by the office of Legal Services, H.E.W. stated that no action would be taken on their complaint until the headquarters office in Washington, D. C., promulgated a policy interpretation setting forth the conditions under which a hospital closure could violate Title VI and the corrective action which would be required. In the opinion of this Court such a response by the Secretary does not show an abdication of her responsibilities. See Caulfield v. Board of Education, supra. In Caulfield, plaintiffs brought suit for declaratory and injunctive relief under Title VI, following voluntary settlement by the agency with defendant Board of Education. The District Court remanded to the agency, but the Appeals Court reversed the remand on the grounds that absent a showing that the agency had abused its discretion, or violated a mandate, a remand to the agency is inappropriate. Plaintiffs have failed to show that the Secretary has abused her discretion in carrying out her duties pursuant to Title VI or the Rehabilitation Act of 1973. Plaintiffs have not even shown a likelihood of such an abuse of discretion. Absent an abuse, intervention in administrative proceedings is considered an extraordinary remedy. The preliminary delay which plaintiffs have suffered does not constitute an irreparable injury since the procedures set out by Congress itself in § 2000d-1 of Title VI provides for an investigation, letter of findings, attempts at voluntary settlement, and a hearing, prior to the termination of federal financial assistance to any entity which discriminates. The Court fails to see how a slightly longer delay in the processing of their complaints will cause them irreparable injury particularly in light of the fact that the removal of acute care facilities at Phillips has already taken place and an immediate termination of federal financial assistance would not be possible in any event.
Plaintiffs have failed to make a clear showing of probable success on the merits and possible irreparable injury with respect to the relief requested against the Secretary. Neither have plaintiffs shown a sufficiently serious question going to the merits *902 making them a fair ground for litigation with the balance of hardships tipping decidedly in plaintiffs' favor. For these reasons, plaintiffs' motion for a preliminary injunction must be denied. However, this Court would most urgently request the Secretary to proceed with all deliberate speed in using her special expertise to conduct an investigation of the allegations contained within plaintiffs' complaint and otherwise implement the legislative mandate expressed in Title VI and the Rehabilitation Act of 1973 by processing the complaint in accordance with the applicable regulations, 45 C.F.R. part 80 (Title VI) and 45 C.F.R. part 84 (Rehabilitation Act of 1973).
As set forth above, since agencies of the government should be given a reasonable time within which to conduct investigations this Court is of the opinion that H.E.W. has not abdicated its responsibility to plaintiffs at this time. See Brown v. Weinberger, 417 F.Supp. 1215 (D.D.C.1976). Therefore, plaintiffs' motion for a temporary injunction predicated upon their Fifth and Fourteenth Amendment rights would not appear to be ripe even assuming plaintiffs have a "liberty" or "property" interest within the meaning of the due process clause of the Fifth or Fourteenth Amendments. See N.A.A.C.P. v. Wilmington Medical Center, Inc., 453 F.Supp. 330, 337 (D.Del.1978). As such, plaintiffs' motion for a preliminary injunction brought pursuant to the Fifth and Fourteenth Amendments will be denied.
The temporary relief requested against all city defendants is an injunction against removing, transferring or dismantling equipment from Homer G. Phillips Hospital, from transferring personnel from Homer G. Phillips Hospital to other city hospitals, from transferring services, closing down or stopping emergency services between the hours of 3:00 p. m. and 7:00 a. m., Monday through Friday, from closing down emergency room services on Saturdays, Sundays and Holidays, and from transferring patients from Homer G. Phillips Hospital to other city hospitals. Such relief is requested pursuant to Title VI, the Rehabilitation Act of 1973 and their implementing regulations.
Plaintiffs' causes of action against the city defendants also invoke issues relating to the doctrine of exhaustion of administrative remedies and the allied doctrines of irreparable injury and the inadequacy of legal remedies. The basic requirement for the issuance of an injunction is a showing by the plaintiff that he does not have an adequate legal remedy or that he has exhausted any available administrative remedies. See Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 506-507, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies); and See Macauley v. Waterman S. S. Corp., 327 U.S. 540, 543-544, 66 S.Ct. 712, 90 L.Ed. 839 (1946); and Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (exhaustion of administrative remedies).
Although the relief requested by plaintiffs is worded in terms of a temporary prohibitory injunction, it is clear from the evidence adduced that the consolidation of hospitals was substantially completed at the time of the hearing and as such plaintiffs are requesting temporary mandatory relief. Plaintiffs' motion for a preliminary prohibitory injunction to preserve the status quo is moot. At no time did plaintiffs move this Court pursuant to Rule 65(b) of the Federal Rules of Civil Procedure for a temporary restraining order to preserve this status quo pending a hearing on the preliminary injunction. In general, a mandatory preliminary injunction at the preliminary stage of the proceedings should be granted only in rare instances where the facts and law are clearly in favor of the moving party, especially if the grant of the temporary injunction would in effect give the plaintiffs the relief which they seek in the main case. Bricklayers, Masons, Marble and Tilesetters, Protective and Benevolent Union No. 7 v. Lueder Const. Co., 346 F.Supp. 558, 561 (D.Neb.1972); Miami Beach Fed. Savs. & Loan Assn. v. Callander, 256 F.2d 410, 415 (5th Cir. 1958). Because this Court is uncertain *903 as to what effect the Bricklayers' decision might have on the Eighth Circuit's standard for the issuance of a preliminary injunction as set forth in Fennell, supra, the Court will determine the motion on the grounds set forth in Fennell.
Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. bans discrimination based upon ground of race, color, or national origin in any program or activity receiving federal financial assistance. The two elements for establishing a cause of action pursuant to Title VI are (1) that the entity involved is engaging in racial or national origin discrimination and (2) the entity involved is receiving federal financial assistance. As in Title VII cases, discriminatory effect alone is sufficient to satisfy the first element, intent to discriminate need not be proven. Lora v. Board of Education of New York, 456 F.Supp. 1211 (E.D. N.Y.1978).
42 U.S.C. § 2000d-1 authorizes the Department of Health, Education and Welfare (H.E.W.) to issue rules, regulations and orders, to make sure the recipients of federal aid under its jurisdiction conduct any federally financed projects consistently with Title VI. H.E.W.'s regulations, 45 C.F.R. § 80.3(b)(1) specify that recipients may not:
(i) deny an individual any service, financial aid, or other benefit provided under the program;
(ii) provide any service . . . or other benefit to an individual which is different, or as provided in a different manner, from that provided to others under the program;
(iii) subject an individual to segregation or separate treatment in any matter related to his receipt of any service . . or other benefit under the program;
(iv) restrict the individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any service . . . or other benefit under the program.
45 C.F.R. § 80.3(b)(2) provides:
(2) A recipient, in determining the types of services . . . or facilities which will be provided under any such program . . . or the situations in which, such services . . . or facilities will be provided under any such program, or the class of individuals to be afforded an opportunity to participate in any such program, may not . . . utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program as respect individuals of a particular race, color, or national origin.
45 C.F.R. § 80.3(b)(3) provides:
(3) In determining the site or location of a facility, an applicant or recipient may not make selections with the effect of excluding individuals from, denying them the benefits of, or subjecting them to discrimination under any programs to which this regulation applies, on the ground of race, color, or national origin; or with the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the Act or this regulation.
See also Lau v. Nichols, 414 U.S. 563, 566-568, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974); Johnson v. City of Arcadia, Fla., 450 F.Supp. 1363, 1379 (M.D.Fla.1978).
The parties have stipulated that the City of St. Louis and its hospital system is a recipient of federal financial assistance and the health care at issue herein is a "program" subject to the Act and regulations.
In the opinion of this Court, plaintiffs have not made a clear showing of probable success on the merits with respect to the second element of their Title VI cause of action. At most plaintiffs have shown that the distance or proximity of obtaining acute in-patient and weekend emergency room services and certain out-patient services has been increased for a substantial but uncertain percentage of northside St. Louis residents. In this respect, the most applicable regulation appears to be 45 C.F.R. § 80.3(b)(3) which *904 requires a showing that the site selection has the effect of excluding individuals from the program or denying them the benefits of the program or has the purpose or effect of defeating or substantially impairing the objectives of the Act or the regulations.
In the opinion of this Court there is no evidence that any plaintiff has suffered such an impediment through the proximity of acute in-patient health care, weekend emergency room services, and certain out-patient care at consolidated City Hospital No. 1, that it was in effect a denial of such care. With respect to the above question, the Court accepts the plaintiffs' testimony that certain isolated incidents occurred during the turbulent consolidation period which delayed needed treatment. For instance, a patient requiring an appendectomy experienced a delay in being transferred from Phillips to City Hospital No. 1. However, such a claim is not properly before this Court, see the standing discussion, supra. Furthermore, this Court finds no reason to believe such incidents will occur in the future considering the attendant circumstances. Plaintiffs have not shown nor alleged that they have been refused or denied treatment at City Hospital No. 1. The testimony regarding available transportation is disputed. The lineal distance from Phillips to City Hospital No. 1 is just over three and one-quarter (3¼) miles. Phillips is in a rather inaccessible location, however, with respect to traffic flow. City furnished ambulances can make the trip in approximately nine (9) minutes given good driving conditions. Many plaintiffs rely on public transportation for access to the hospitals, however, and there is no direct route on the bus system from Phillips to City Hospital No. 1. The testimony indicates that such a trip can take from forty to sixty (40-60) minutes.
The nature of plaintiffs' injury through the proximity of consolidated services at City Hospital No. 1 is closely related to the standing discussion set out supra. In the opinion of this Court this case is vastly different from several Title VI cases where location or proximity of an activity or program was crucial. In these types of cases a municipality would provide a certain service to a predominately white section of town and a disparate or inferior service in a predominately black section of town. Typically the service involved such as street lights, sewers, roads and fire hydrants was useful only in a particular location or area and was of no use to those outside the immediate area because of the limited geographical nature of the services it provides. In the instant case the racially identifiable neighborhoods in the immediate vicinity of City Hospital No. 1 and City Hospital No. 2 are not so stratified nor is the program or service useful or beneficial to those only in its immediate vicinity. See e. g., Johnson v. City of Arcadia, Fla., supra; Hawkins v. Town of Shaw, 303 F.Supp. 1162 (N.D.Miss. 1969), rev'd 437 F.2d 1286 (5th Cir. 1971), aff'd en banc, 461 F.2d 1171 (5th Cir. 1972). Lau v. Nichols, supra, is instructive as to what types of conditions or requirements imposed by a program subject to the Act can effectively deny access to benefits or programs. In Lau, the district court found that there were twenty eight hundred and fifty six (2,856) students of Chinese ancestry in the San Francisco, California school system who did not speak English. Of those with the language deficiency about one thousand (1,000) were given supplemental courses in English but about eighteen hundred (1,800) did not receive that instruction. A class suit was brought by the non-English speaking Chinese students under the Equal Protection Clause and the Civil Rights Act of 1964. Basing its decision squarely on 42 U.S.C. § 2000d, the Supreme Court used a standard of effective foreclosure, Lau v. Nichols, supra, 414 U.S. at 566, 568, 94 S.Ct. 786. In the opinion of this Court, no such effective foreclosure through proximity has been shown by the plaintiffs herein. Furthermore, in determining whether plaintiffs have made a clear showing of probable success on the merits or sufficiently serious questions going to the merits making them a fair ground for litigation, certain testimony offered by the defendants must be considered. Credible testimony introduced at the hearing indicates *905 that over-all acute in-patient care has been improved through consolidation and consolidation has definitely been beneficial to the delivery of improved health care in the City of St. Louis. Both hospitals have historically had low percentages of actual bed usage. City Hospital No. 1 was originally built in 1846 and rebuilt at the turn of the Century with subsequent additions and remodelings as late at 1975. City Hospital No. 1 is located at 14th and Lafayette Streets just south of downtown St. Louis with an in-patient capacity of five hundred and fifty (550) beds. Phillips was completed in 1937 and is located at Whittier and Kennerly in North St. Louis. It has an in-patient capacity of four hundred and sixty six (466) beds. As a result of various surveys and studies it was concluded on various bases, e. g., age of the buildings, support services, access, etc., that consolidation should occur at City Hospital No. 1. Mayor James Conway, on the basis of experts' conclusions, ordered consolidation on July 30, 1979, and consolidation was completed with the transfer of the last few patients on August 17, 1979. Furthermore, it was shown at trial that City Hospital No. 1 has better support facilities, ambulance service between City Hospital No. 1 and Phillips including four full life support vehicles, far better highway access and better university medical school support than Phillips. All these factors and another, the current financial situation facing the divisions of hospitals of the City of St. Louis and the seven million dollar ($7,000,000) per year savings projected to be realized through consolidation (this was not, however, the principal factor in deciding to consolidate the hospitals) are relevant in determining probable success on the merits or sufficiently serious questions going to the merits, because of similar defenses afforded Title VII and Equal Protection defendants facing allegations of disparate impact set forth to make a prima facie cause of action. However, in the opinion of this Court plaintiffs have not made such a statistical showing although it appears defendants would prevail in such a defense.
With respect to the possibility of irreparable injury or a balance of hardships tipping decidedly toward plaintiffs, the Court can only state that the hardships which defendants would experience in complying with any temporary mandatory injunction would far outweigh any hardships plaintiffs would experience in pursuing their administrative remedies. Plaintiffs alleged injury, i. e., site selection of the consolidated hospital, has already taken place. For the reasons set forth above, this Court will deny plaintiffs' motion for a mandatory preliminary injunction against the City defendants brought pursuant to 42 U.S.C § 2000d.
The same impediments to the issuance of the requested injunctions exists as to plaintiffs' claims brought pursuant to the Rehabilitation Act of 1973. Additionally, plaintiffs have failed to show this Court how proximity considered alone would appear to be a greater barrier to access to treatment at City Hospital No. 1 for handicapped individuals "solely by reason of [their] handicap". The only handicapped plaintiff to testify indicated that because of his epilepsy it would be more difficult for him to travel the additional distance from his home to City Hospital No. 1. This testimony alone, like the evidence introduced by plaintiffs in support of their Title VI cause of action, does not show an effective denial of access to the hospitals' benefits or programs. Surely, it is not sufficient to clearly show probable success on the merits or a sufficiently serious question going to the merits making them a fair ground for litigation with the balance of hardships tipping decidedly in plaintiffs' favor. Therefore, plaintiffs' motion for a preliminary injunction pursuant to the Rehabilitation Act of 1973 must be denied.