**Marvin D. BAKER, Plaintiff/Appellant,**

v.

**The BOARD OF REGENTS OF the STATE of KANSAS and University of Kansas Medical School—School of Medicine, Defendants/Appellees.**

No. 91–3238.

United States Court of Appeals, Tenth Circuit.

April 12, 1993.

---

BRIMMER, District Judge.

## OPINION

### I.

This case involves a reverse discrimination claim arising from a denial of admission to the University of Kansas Medical School ("KUMS"). Marvin Baker ("Baker"), appellant, a white male, claims that he has been discriminated against in violation of the United States and Kansas Constitutions, and 42 U.S.C. §§ 1981 and 2000d. This is an appeal from an order of the United States District Court granting summary judgment on behalf of appellees and dismissing the appellant's amended complaint.

Baker received a letter dated January 29, 1986, denying his admission to KUMS. Although KUMS had a waiting list, and the final list of admittees was not finalized until August of 1986, the January 29, 1986 letter to Baker was a flat denial for admission. This was the third consecutive year that Baker had been denied admission to KUMS.

On February 12, 1986, Baker met with Dr. Thorkil Jensen, the Associate Dean of KUMS, to discuss the reasons for his rejection. Dr. Jensen told Baker that he had been denied admission because he had done poorly in his interview. KUMS uses four criteria for admissions: (1) G.P.A.; (2) the Medical School Admissions Test score (MCAT); (3) the advisors' recommendations, and (4) interview evaluations.

Baker graduated from Kansas University in 1984 with a GPA of 3.53 (3.64 in the basic sciences). His combined GPA/MCAT score for 1985 and 1986 was 625. On December 1, 1987, KUMS, in response to a request for information, advised Baker that he had the highest GPA/MCAT score of any Kansas resident who was denied admission in 1986. In 1986, there were at least 104 applicants with lower scores who were either admitted to KUMS or put on the waiting list. In 1985, no admitted mi-

Robert E. Keeshan and Anthony D. Clum of Hamilton, Peterson, Tipton & Keeshan, Topeka, KS for plaintiff/appellant.

John C. McFadden and Steven Ruddick, University of Kansas Medical Center, Lawrence, KS, for defendants/appellees.

Before BALDOCK and SETH, Circuit Judges, and BRIMMER, District Judge.*

* The Honorable Clarence A. Brimmer, United States District Court Judge for the District of Wyoming, sitting by designation.

nority had a combined GPA/MCAT score higher than Baker.

## II.

The district court, in granting summary judgment to KUMS, held that Baker's federal claims were barred by a two-year statute of limitations period which began to run in late January or early February, 1986. *Baker v. Bd. of Regents of the State of Kan., et al.,* 768 F.Supp. 1436, 1442 (D.Kan.1991). Baker filed his lawsuit on June 14, 1988.

"In reviewing a summary judgment order, the appellate court applies the same standard employed by the trial court under Rule 56(c) of the Federal Rules of Civil Procedure." *Osgood v. State Farm Mut. Auto. Ins. Co.,* 848 F.2d 141, 143 (10th Cir.1988). The rule directs that summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, "[w]hen a motion for summary judgment is granted, it is the appellate court's duty to examine the record to determine if any genuine issue of material fact was in dispute; if not, the court must determine if the substantive law was correctly applied." *Osgood,* 848 F.2d at 143. "The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment, and the court must review the record in the light most favorable to the opposing party," *Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987).

## III.

We agree with the trial court's analysis that the two year state statute of limitations should be applied to the federal law claims asserted under 42 U.S.C. §§ 1981 and 2000d, and to 42 U.S.C. § 1983 and 29

U.S.C. § 794, which the appellant moved to add to the complaint.

■ No federal statute of limitations is expressly provided for civil rights claims brought under these sections. However, Congress has directed the courts to look to state law in civil rights cases where federal law is "deficient in the provisions necessary to furnish suitable remedies ... [and the state law] is not inconsistent with the Constitution and laws of the United States...." 42 U.S.C. 1988 (1981 & Supp. 1992).

■ The first step in selecting the applicable state statute of limitations is to characterize the essential nature of the federal action. *Garcia v. Wilson,* 731 F.2d 640, 642 (10th Cir.1984) *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Braden v. Texas A & M Univ. System,* 636 F.2d 90, 92 (5th Cir.1981); *Burns v. Sullivan,* 619 F.2d 99, 105 (1st Cir.1980), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). Characterization of a federal claim is a matter of federal law. *United Auto. Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966); *Garcia,* 731 F.2d at 642. Section 1983 claims are best characterized as personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985); *Garcia,* 731 F.2d at 651. This Court, using the rationale from *Garcia,* has also characterized section 1981 claims as actions for injury to personal rights. *Equal Employment Opportunity Comm'n v. Gaddis,* 733 F.2d 1373 (10th Cir.1984). Because both section 1983 and 1981 claims are actions for injury to the rights of another, the appropriate state statute of limitations is Kan.Stat.Ann. § 60–513(a)(4) (1983 & Supp. 1992).[1] *Pike v. City of Mission, Kan.,* 731 F.2d 655, 658 (10th Cir.1984); *Board of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795,

---

**1.** Kan.Stat.Ann. § 60–513(a)(4) provides:
  The following actions shall be brought within two years:

  (4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.

64 L.Ed.2d 440 (1980) ("[T]he controlling period would ordinarily be the most appropriate one provided by state law.").

The first step in analyzing whether Kan. Stat.Ann. § 60–513(a)(4) should also apply to claims brought under 42 U.S.C. § 2000d and 29 U.S.C. § 794 is to characterize the nature of the claims. *Garcia,* 731 F.2d at 642. We believe the appropriate focus should not be on the remedy, but on the elements of the cause of action, because they most fully describe the essence of the claim. *Id.* at 650–51.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d,[2] bans discrimination based upon race, color, or national origin in any program or activity receiving federal financial assistance. The two elements for establishing a cause of action pursuant to Title VI are (1) that there is racial or national origin discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance. *Jackson v. Conway,* 476 F.Supp. 896, 903 (E.D.Mo. 1979), *aff'd,* 620 F.2d 680 (8th Cir.1980).

The goal of Title VI is to "safeguard against the use of federal funds in a way that encourages or permits discrimination." U.S.C.C.A.N. 2355, 2510–13 (1964); *see also Regents of Univ. of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *Brown v. Board of Educ. of Topeka,* 892 F.2d 851, 887 (10th Cir.1989). Title VI is a civil rights statute, and we believe that it is closely analogous to sections 1983 and 1981. The language of Title VI specifically refers to discrimination against a "person." This language is similar to that in sections 1983 and 1981, which language protects a "person" from deprivation of rights, and which provides equal rights under the law to all "persons." An injury resulting from discrimination produces impairments and wounds to the rights and dignities of the individual. *Burke v. United States,* 929 F.2d 1119, 1121–22 (6th Cir. 1991), *rev'd on other grounds,* — U.S. —, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992).

We hereby extend the reasoning from *Garcia* to Title VI claims and conclude that Title VI claims are best characterized as actions for injury to personal rights. This result is consistent with our decision to adopt a general characterization for all civil rights claims based upon our perception of the nature of the claims. *Garcia,* 731 F.2d at 649. Characterizing all Title VI actions as claims for personal injuries "minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by" Title VI. *See Wilson,* 471 U.S. at 279, 105 S.Ct. at 1948. "Moreover, the legislative purpose to create an effective remedy for the enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations." *Id.* at 261, 105 S.Ct. at 1939. Our general characterization of Title VI claims as actions for injury to personal rights promotes a consistent and uniform framework by which suitable statutes of limitations can be determined for civil rights claims. *Garcia,* 731 F.2d at 643.

The appellant moved the trial court to allow it to amend its complaint to allege a cause of action under 29 U.S.C. § 794 (1985 & Supp.1992) (§ 504 of the Rehabilitation Act).[3] The trial court held that Kan.Stat. Ann. § 60–512 also applied to the appellant's cause of action under 29 U.S.C. § 794. *Baker,* 768 F.Supp. at 1442. We agree.

Section 504 of the Rehabilitation Act protects an individual with handicaps from discrimination. It is a " 'civil rights statute ... closely analogous to section 1983.' "

---

**2.** Title VI, 42 U.S.C. § 2000d provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**3.** 29 U.S.C. § 794 provides:

No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

We have recognized that a private right of action exists under 29 U.S.C. § 794. *Pushkin v. Regents of the Univ. of Colorado,* 658 F.2d 1372 (10th Cir.1981).

*Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 408 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 982, 117 L.Ed.2d 144 (1992) *quoting Alexopulos v. San Francisco Unified Sch. Dist.*, 817 F.2d 551, 554 (9th Cir.1987). In *Wilson*, the Supreme Court held that a section 1983 claim must be brought within the period prescribed by state law for personal injury actions. 471 U.S. at 276, 105 S.Ct. at 1947. Because a section 504 claim is closely analogous to section 1983, we find that section 504 claims are best characterized as claims for personal injuries.

Because all of the appellant's federal claims are best characterized as claims for personal injuries, we affirm the trial court's finding that Kansas' two-year limitations period for personal injury actions, Kan.Stat.Ann. § 60–512, applies to all of the appellant's federal claims.

### IV.

The trial court held that the appellant's cause of action accrued in late January or early February of 1986, when Baker received a letter from KUMS denying his admission. For reasons explained below, we affirm the trial court's holding.

▆▆▆ Federal law controls questions relating to accrual of federal causes of action. *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir.1987) (overruling *Clulow v. Oklahoma*, 700 F.2d 1291 (10th Cir.1983) and *DeVargas v. Montoya*, 796 F.2d 1245 (10th Cir.1986)). A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991); *Amburgey v. Cohart Refractories Corp.*, 936 F.2d 805, 810 (5th Cir.1991); *Ching v. Mitre Corp.*, 921 F.2d 11, 14 (1st Cir.1990); *Kline v. North Texas State Univ.*, 782 F.2d 1229, 1232 (5th Cir.1986).

The record shows that Baker received a letter dated January 29, 1986, denying him admission to KUMS. Baker was not placed on a waiting list. This was a flat denial for admission. On February 12, 1986, Baker met with Dr. Jensen at KUMS. Dr. Jensen advised Baker that he had been rejected because he had done poorly in his interview, which was one of the four criteria for admission. This was the third consecutive year that Baker had been denied admission to KUMS.

▆▆▆ The appellant argues that the cause of action did not accrue until August of 1986, when KUMS' list of admittees was finalized. We disagree. The appellant knew in early February that his application for admission had been rejected. He was not put on the waiting list for admission. We conclude that the appellant knew or had reason to know of the injury early in February of 1986.

Appellant argues that although he received a rejection letter in February of 1986, he was not aware of certain "critical facts" until much later. For example, appellant did not know that he had the highest cumulative GPA/MCAT scores of any non-admitted Kansas resident until December 1, 1987. However, it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue. *Blumberg v. HCA Management Co.*, 848 F.2d 642, 645 (5th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989).

By February 12, 1986, Baker knew that his application had been rejected, and he had met with Dr. Jensen and knew that the reason for rejection was a poor interview. At that point, Baker knew, or had reason to know of the injury which formed the basis for this action. Accordingly, we see no reason to disturb the trial court's holding that the cause of action accrued in early February of 1986.

### V.

Appellant argues that the doctrine of equitable tolling is applicable to this case to extend the two year statute of limitations because the appellee allegedly concealed facts thereby preventing the plaintiff from knowing that a cause of action existed. We disagree.

▆▆▆ The length of a statute of limitations period and related questions of tolling

and application are governed by state law, unless the tolling rules are inconsistent with federal law or with the policy which federal law seeks to implement. *Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943; *Pike v. City of Mission, Kan.,* 731 F.2d 655, 658 (10th Cir.1984). In *Pike,* we stated that "[u]nder Kansas law, fraudulent concealment does not toll the statute of limitations unless the plaintiff's claim for relief is grounded on fraud." 731 F.2d at 658, *quoting McCoy v. Wesley Hosp. & Nurse Training School,* 188 Kan. 325, 362 P.2d 841, 847 (1961). However, that statement of the law no longer appears to be true. Now, under Kansas law, in order "[t]o constitute concealment of a cause of action within the general rule tolling the statute of limitations, . . . there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Friends Univ. v. W.R. Grace & Co.,* 227 Kan. 559, 608 P.2d 936, 941 (1980).[4] In some situations, "[t]he mere fact of remaining silent, when possessing material knowledge not held by another, is sufficient to toll the statute where that silence causes another to fail to take timely action which he would have taken had he possessed such knowledge." *Ferrell v. Ferrell,* 11 Kan.App.2d 228, 719 P.2d 1, 5 (1986).

In *Ferrell,* a probate court in a prior proceeding, ordered that certain real property be distributed by giving the surface rights to Lloyd Ferrell and the mineral interests to Garland Ferrell. Subsequently, Lloyd Ferrell had deeds drawn up, which conveyed both the surface and mineral interests to himself. The deed was sent to Garland Ferrell's estate with a letter stating that the deed conveyed the "surface interests." The deed was signed, conveying all interests to Lloyd Ferrell. In a subsequent action by Garland Ferrell's estate, the court held that Lloyd Ferrell's silence concerning the conflict between the deeds and the settlement agreement and his failure to object to royalty payments made to Garland Ferrell, and his allowing Garland to pay property taxes were sufficient to invoke equitable estoppel, tolling the statute of limitations. *Id.*

■ After reviewing the record in a light most favorable to the appellant, we conclude that there is nothing to suggest that KUMS acted affirmatively to conceal, or to prevent the appellant from discovering the cause of action. In addition, under *Ferrell,* remaining silent will toll the statute of limitations only if that silence caused the claimant to fail to take timely action which he would have taken had he possessed knowledge concealed by the silence. We find it relevant that the appellant was considering litigation as early as June of 1986,[5] and that he had an attorney reviewing the matter within the limitations period. *See Blumberg v. HCA Management Co.,* 848 F.2d 642, 645 (5th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989). Also, Baker learned in a December 1, 1987 letter, approximately two months before the limitations period expired, that he had the highest scores of any Kansas resident not admitted. Under these facts, we conclude that Baker had sufficient knowledge of the injury to bring an action within the limitation period. For these reasons, we agree with the trial court's holding that it would be inappropriate to toll the limitations period in this case.

---

4. This standard is similar to that applied by the Tenth Circuit for equitable tolling under federal principles of fraudulent concealment. The appellant must show that his ignorance was not the result of his lack of diligence, but was due to **affirmative acts** or **active deception** by the appellant to conceal the facts giving rise to the claim. *See Johnson v. U.S. Postal Serv.,* 861 F.2d 1475, 1481 (10th Cir.1988), *cert. denied,* 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989); *Pike,* 731 F.2d at 658.

5. In June of 1986, Baker wrote to KUMS to see if the decision to deny him admission was "set in stone and they could not change it meaning I would have to do something different to get in." Baker stated in his deposition that the purpose of the letter was to try to "talk to [Dr. Jensen] to see if there could be another way that it could be dealt with other than through litigation or if it was constitutionally just litigation that would be required to get them to change their decision or modify it."

## VI.

On July 27, 1989, the appellant filed a motion to amend its pleading to include a cause of action for breach of contract under state law. The trial court, after concluding that the appellant's federal claims were barred by the two year statute of limitations, exercised its discretion and dismissed the contract claim. "Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Even though "trial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed," *Province v. Cleveland Press Publishing Co.*, 787 F.2d 1047, 1055 (6th Cir.1986), they are not required to.

Effective December 1, 1990, Congress enacted legislation, codified at 28 U.S.C. § 1367 (1976 & Supp.1992), which supersedes the common law pendent jurisdiction doctrine. *See Whalen v. Carter*, 954 F.2d 1087, 1097 (5th Cir.1992); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402 (6th Cir.1991). Title 28 U.S.C. 1367 specifically provides that:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) *if*—

\*    \*    \*    \*    \*    \*

(3) the district court has dismissed all claims over which it has original jurisdiction...

The district court, in its discretion, declined to exercise supplemental jurisdiction over the appellant's state law contract claim. We see no reason to disturb the district court's decision.

For the foregoing reasons, the judgment of the district court, granting summary judgment to the appellee, is **AFFIRMED.**