Kevin Lee BIGLOW, Plaintiff,

v.

The BOEING COMPANY, Defendant.

No. 00–2370–KHV.

United States District Court, D. Kansas.

Oct. 3, 2001.

Dennis E. Egan, Claudio E. Molteni, The Popham Law Firm, P.C., Kansas City, MO, Deborah L. Hughes, Lawrence, KS, for plaintiffs.

Jay F. Fowler, J. Steven Massoni, Todd N. Tedesco, Boyd A. Byers, Foulston & Siefkin L.L.P., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Kevin Lee Biglow brings employment discrimination and retaliation claims against The Boeing Company ("Boeing") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. as amended, the Kansas Acts Against Discrimination ("KAAD"), K.S.A. § 44–1001 et seq., and the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983. This matter comes before the Court on Defendant's Motion For Partial Summary Judgment On Plaintiff Biglow's Claims (Doc. # 81) filed July 6, 2001 and Defendant's Motion To Determine Wichita As Place Of Trial (Doc. # 112) filed August 9, 2001. For reasons stated below, the Court sustains defendant's motion for partial summary judgment in part and overrules defendant's motion to determine Wichita as the place of trial.

### I. Motion For Partial Summary Judgment

Defendant argues that it is entitled to partial summary judgment because (1) plaintiff did not exhaust administrative

remedies on his KAAD claims (Count 4); (2) plaintiff did not file his Title VII claims (Counts 2 and 3) within 90 days after he received his right to sue letter from the Equal Employment Opportunity Commission ("EEOC"); and (3) a two-year statute of limitations confines plaintiff's Section 1981 claims (Count I) to acts which occurred after September 27, 1997. Plaintiff agrees that his KAAD claims should be dismissed. See Plaintiff Kevin Biglow's Memorandum In Opposition To Defendant's Motion For Partial Summary Judgment ("Plaintiff's Memorandum") (Doc. #111) filed August 10, 2001 at 1. With respect to his remaining claims (Title VII and Section 1981), plaintiff asserts that the time for filing the claims should be tolled because he participated in a class action case, Williams v. The Boeing Co., Case No. C98 761C, in the United States District Court for the Western District of Washington. Plaintiff further asserts that his Section 1981 claims are subject to a three-year statute of limitations and should be equitably tolled because defendant affirmatively concealed material facts.

## A. Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc., 912 F.2d 1238, 1241 (10th Cir.1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. See Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52, 106 S.Ct. 2505.

## B. Facts

The following facts are either uncontroverted or construed in a light most favor-

able to plaintiff. In April 1989, Boeing hired plaintiff to work as an operator 1 data processor in its data center in Wichita, Kansas. In December 1991, Boeing promoted plaintiff to systems configuration specialist. In July 1992, Boeing reduced its work force in Wichita. In order to avoid laying plaintiff off, Boeing demoted him to an operator 3 data processor—the job which plaintiff had held immediately before his promotion to systems configuration specialist.

In June 1994, plaintiff unsuccessfully applied for a systems configuration specialist position in data processing. In October 1994, Boeing promoted plaintiff to systems configuration specialist on its military side. Cecil Gardner interviewed, hired and managed plaintiff in the new position. Gardner and plaintiff planned for plaintiff to work at grade 48 for six months (until April 1995) and then move to grade 51. In February 1995, however, Gardner recommended that Boeing increase plaintiff's pay to grade 51. Gardner believed that plaintiff's work performance warranted the raise in pay. Gardner's manager, Allen Johnson, approved the recommendation on March 22, 1995. For reasons which are not clear on this record, plaintiff did not receive the pay raise. At Gardner's suggestion, plaintiff spoke to Warren Korphage, manager of human resources, about why he had not received the pay raise. Korphage told plaintiff that it was Gardner's responsibility to get money for the raise.

Beginning in February 1995, plaintiff continually spoke to Gardner about increasing his pay to grade 51. Starting around the same time, Gardner repeatedly tried to increase plaintiff's pay to grade 51. In doing so, Gardner contacted his supervisors, including Johnson, Korphage and

Armond Friend.[1] Based on his work performance, Gardner believed that plaintiff deserved to be paid at grade 51. Gardner's managers consistently told Gardner that the budget included no money to raise plaintiff's pay. Gardner relayed this information to plaintiff.

In approximately 1997 or 1998, Gardner wrote a memorandum as part of his "continued quest" to increase plaintiff's pay.[2] The memorandum reflected that plaintiff was classified at grade 48 and received a salary of $30,350. In the memorandum, Gardner stated:

> Kevin and I have for the past several years, in conjunction with my management have [sic] worked on a plan to get him to the next level (51) in his current Job code. There has been some progress made with this plan but it has been slow and could take several more years to accomplish. In the mean time [sic] Kevin is performing a grade level work and should be compensated at that level.
>
> Our plans to get Kevin to the next level consisted of utilizing funds from my merit pool and also to request funds from my management from various other pools. As promotions had to come from my organization's merit pool, a very small pool, consequently this fact limited my ability to give greater merits to Kevin to get him to the next level. We have also given Kevin an "out of sequence" merit in 1996.
>
> Yet with all of this progress made we have some ways to go to get him to the next level.
>
> \*    \*    \*    \*    \*    \*
>
> Target:
>
> A. Promote Kevin to the job code/ grade level of BH 51.

---

1. Friend's position at Boeing is not clear.

2. The record is unclear to whom Gardner wrote the memorandum.

B.  Get his Salary [sic] in line with his peers that are performing similar duties.

C.  Compensate Kevin for the level of work in which he is performing.

\*    \*    \*    \*    \*    \*

Proposal:

I propose that we utilize the current promotion process and request the necessary funds to promote Kevin to the entry level grade 51 ($37,500). I also propose that we proceed with current merit distribution planned for this cycle to get his salary to the final sum of $39,350 retroactive to coincide with other promotions given within this job code.

Memorandum from Gardner (undated), Deposition Exhibit 8 attached to Plaintiff's Memorandum.

In early February 1997, Boeing confirmed that one of its employees, Randy Bellow, was performing grade 51 level work and increased his pay accordingly. In October 1997, Boeing confirmed that another employee, Kim Zehr, was performing grade 51 level work and increased her pay accordingly. The record in unclear how long Bellow and Zehr had been performing at the grade 51 level.

In February 1998, plaintiff learned that Boeing had increased the pay of Jeff Lyons and Jeff Martin, two white employees, to grade 51. Earlier the same day, Gardner told plaintiff that he had met with his supervisors and that they did not have money to raise plaintiff's pay. When plaintiff learned that the other employees received raises, he confronted Gardner. Gardner did not believe it was possible that the other employees had received raises. Gardner called Korphage on the speaker phone, with plaintiff present. In confirming that the others had received raises, Korphage stated: "Goddam, Cecil, those guys were told to keep their fucking mouths shut." Plaintiff's Dep. at 219 l.17

to 220 l.3, attached to Plaintiff's Memorandum.

On March 26, 1998, plaintiff wrote an e-mail to Johnson which stated, in part, as follows:

Gerry [sic] I am writing to you at this time to express my deep concerns regarding my compensation the past 3 and 1 half years. Gerry [stet] I am approaching my 9th year with The Boeing Company and my 4th year supporting the Military Customers. . . .

Gerry [sic] I have always believed in using the proper channel of communicating issues and concerns, and this [sic] particular matter, concerning my salary compensation, I felt it necessary to use my first line manager Mr. Cecil Gardner whom I have nothing but trust and respect for.

I took this position in October 1994 I[sic] was told that I would get moved up to the minimum salary for that position, however, when it was discovered that it would require maybe a 7 or 8 thousand dollar annual increase, Cecil had to the [sic] the bearer of bad news by telling me that it [sic] was not enough money in the merit pool to support that increase, (now this is what was told to Cecil by someone in upper management). . . .

My second year was somewhat identical to the first, [sic] The promises carried over from the first year to the second, those promises was [sic] to get me the proper pay scale but none of these promises was ever fulfilled, [sic] I seemed to get the same old song and dance, [sic] That being not enough money in the merit pool, while other employees that was [sic] performing the same duties and responsibilities was being [sic] raised to the correct pay, [sic] Gerry I know this because people do discuss voluntarily their pay, [sic] I even brought that rumor/hearsay to Cecil's

attention, [sic] again I would like to say that Cecil did check out those rumor/hearsay and it was confirmed that money was found to get these other employee's [sic] up to the correct pay. My third year was again much like the first and second years, [sic] again the same old repeated reason as to why I could not be on the same pay scale as everyone else, [sic] Even though I am performing the same duties and responsibilities and in some situations more, [sic] I think the only difference in the third year was that Cecil did find an additional one thousand dollars for me, [sic] I did appreciate that, [sic] Please check my salary and compare it to the others [sic] I am still way below everyone else.

It is now the fourth year and I am still struggling with trying to get fair compensation pay equal to that of co-workers performing the same duties and responsibilities. A memo came out the first part of February 1998 indicating that managers will be able to promote employees [sic] Cecil had a good feeling about this and indicated that it is a strong possibility that he could now promote me to the proper grade which will allow me to move from a BH 48 to BH 51[sic] he said that the money will not have to come from the merit pool, [sic] You know this made me feel very excited, but once again this proved to be short lived, [sic] The same old song and dance "No Money, No Money, No Money.". Well on March 23, 1998 I was working on a problem and I needed some information so I called an individual, however, at this time I would like to keep his name anonymous, [sic] But for explanation purposes we can call him "J" ... I then asked ["J"] if he was working problems, performing software configuration etc. "J's" response was yes, then he voluntarily said that he and another person got about a ten thousand dollar

annual pay raise, [sic] I told "J" that I did not believe him, [sic] But I was basing that on what Cecil had told me about no money being available, [sic] I ticked [sic] off at this point, [sic] He was beginning to feel that I did not trust him, [sic] it wasn't that I did not trust him, [sic] But I felt that a report like that should be checked out. Cecil did make a phone call to H.R. and it was indeed confirmed that these individuals had been compensated according to what "J" had indicated to me.

I have several questions that I would like to have answered, But [sic] only 2 that I care to mention in this letter.

Why have I had to wait 3 and 1 half years and currently still [sic] waiting to be compensated fairly and equal to those performing same jobs?

Why was a lump sum increase given to these individuals first? I have been waiting much longer 3[sic] and 1 half years to be exact; If [sic] possible I would like to meet with you and whom ever [sic] you require to be present to discuss this matter.

E-mail from plaintiff to Gerry Johnson dated March 26, 1998, Deposition Exhibit 8 attached to Plaintiff's Memorandum.

In April 1998, Boeing increased plaintiff's pay to grade 51, retroactive to February 27, 1998, the date that Lyons and Martin received their increases. Boeing also gave plaintiff a merit increase which increased his salary above that of Lyons and Martin.

On June 4, 1998, a class action racial employment discrimination suit was filed in the United States District Court for the Western District of Washington. Williams v. The Boeing Co., Case No. C98 761C. Plaintiff, an African American male, was a member of the plaintiff class in that case.

On December 11, 1998, plaintiff filed a charge of discrimination with the EEOC. On the same day, plaintiff requested and received a right to sue letter from the EEOC. Plaintiff did not file a complaint with the Kansas Human Rights Commission.

On April 21, 1999, plaintiff gave notice that he was opting out of the class action.

On August 14, 2000, plaintiff filed his complaint in this case.

## C. Analysis

### 1. Title VII Claims—Opting Out Of Class Action

■ Defendant asserts that plaintiff's Title VII claims are barred because he did not bring them within 90 days after he received his right to sue letter from the EEOC. Section 2000e–5(f) requires plaintiff to bring his Title VII claims within 90 days of receiving notice of his right to sue. See 42 U.S.C. § 2000e–5(f). Defendant agrees that plaintiff's claims were equitably tolled during the time he was a class member in Williams. See *Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir.1994) (filing class action tolls time limitation for putative class members until certification denied or until plaintiff opts out); see also *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *Realmonte v. Reeves*, 169 F.3d 1280, 1284 (10th Cir. 1999). Defendant asserts that the time for plaintiff to file his claims resumed on April 21, 1999, however, when plaintiff gave notice that he was opting out of the class. Under this analysis, the time for plaintiff to file his Title VII claims expired on July 20, 1999. Plaintiff waited more than a year later, until August 14, 2000, to file his claims in this case.

Plaintiff argues that his participation in Williams is uncertain because of a pending appeal regarding the proposed class settlement. Plaintiff agrees that his Title VII claims are barred if the settlement is affirmed. Plaintiff asserts, however, that if the settlement is overruled it is "possible" that his opt-out notice "could be" rendered null and void. Plaintiff's Memorandum at 13–14. Plaintiff cites no factual or legal authority to support this perceived possibility. The undisputed facts establish that plaintiff gave notice to opt out of the class on April 21, 1999. Plaintiff has not established a genuine issue of fact or law which supports his belief that this notice might not be effective. Accordingly, the Court will sustain defendant's motion as to the Title VII claims.

### 2. Section 1981 Claims

### A. Applicable Limitations Period

■ Defendant asserts that plaintiff's Section 1981 claims are limited by a two-year statute of limitations to events that occurred after September 27, 1997.[3] Plaintiff contends that a three-year statute of limitations applies because he was a class member in Williams, which was filed in the State of Washington. In determining the applicable limitations period, the Court looks to the state statute of limitations for analogous personal injury claims. See *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 630 (10th Cir.1993). In Kansas, a two-year limitations period applies. See *id.* Washington applies a three-year period. See *Lewis v. Lockheed Shipbuilding & Constr. Co.*, 36 Wash.App. 607, 676 P.2d 545, 548 (1984) (finding that three-year limitations period applies to state employment discrimination actions).

Plaintiff cites no authority to support his argument that the Court should apply the

**3.** Defendant has added 331 days to the two-year time period to account for the time when

plaintiff was class member in Williams.

Washington limitations period. Had plaintiff transferred his claims in Williams to this Court, his position might be well taken.[4] See *Benne v. Int'l Bus. Machines Corp.*, 87 F.3d 419, 423–24 (10th Cir.1996) (substantive law of state of transferor court, including statute of limitations, applies when venue changed pursuant to 28 U.S.C. § 1404). But that is not the case here. Plaintiff opted out of the Williams class on April 21, 1999. More than a year later, on August 14, 2000, he filed his independent claims in this Court. Plaintiff provides no basis on which to apply the Washington statute of limitations. Accordingly, the Court will apply the Kansas two-year limitations period.

### B. Equitable Tolling

■ Plaintiff asserts that the Court should toll his Section 1981 claims because defendant deceived him into believing that it had no money to raise his pay. Specifically, plaintiff contends that during the time when he performed grade 51 work, his managers repeatedly told him that no money was available to raise his pay when in fact defendant was raising other employees to grade 51. Plaintiff further contends that Korphage's statement that other employees were told to keep their mouths shut about their pay raises demonstrates that defendant actively concealed facts from plaintiff. In determining whether to toll the statute of limitations, the Court looks to Kansas law. See *Baker*, 991 F.2d at 632–33. Under Kansas

law, plaintiff may toll the limitations period if he shows "something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Id.* at 633 (quoting *Friends Univ. v. W.R. Grace & Co.*, 227 Kan. 559, 564, 608 P.2d 936, 941 (1980)).

Viewed in a light most favorable to plaintiff, the record supports an inference that defendant took affirmative steps to conceal facts regarding its decision not to raise plaintiff's pay. The undisputed facts establish that beginning in February 1997, defendant increased the pay of other employees to grade 51.[5] During this time, plaintiff's supervisors told him that no money was available to increase his pay. This, combined with Korphage's statement in February 1998 that Lyons and Martin were told to keep their mouths shut about their pay raises, supports an inference that defendant took affirmative steps to prevent plaintiff from discovering facts regarding its refusal to increase his pay. Accordingly, plaintiff has presented a genuine issue of material fact regarding whether his Section 1981 claims should be equitably tolled for approximately one year from when defendant raised the pay of Randy Bellow (in February 1997) to when plaintiff learned that Lyons and Martin had received raises (in February 1998).[6]

### II. Motion To Determine Wichita As Place Of Trial

■ Defendant asks the Court to determine Wichita as the place of trial, assert-

---

**4.** In its reply brief, defendant attaches a copy of the consent decree in Williams, which provides that the claims of class members who reside in Kansas shall be limited by a two-year statute of limitations. See Consent Decree at 4, attached as Exhibit A to Reply Memorandum In Support Of Defendant's Motion For Partial Summary Judgment (Doc. # 132) filed September 7, 2001. The Court does not consider this evidence, however, because defendant raised it for the first time in its reply and plaintiff has not had a chance to

respond. See *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir.1998) (court may either permit surreply or refrain from relying on new material in reply brief).

**5.** Plaintiff had been complaining about his pay since 1995, but he presents no evidence that defendant increased the pay of other employees at that time.

**6.** The record does not establish the exact dates of these acts.

ing that Wichita is more convenient to the witnesses and parties. Plaintiff opposes the motion, arguing that the Court should defer to plaintiff's choice of forum particularly in light of the fact that Boeing is a large and powerful employer in Wichita and because Wichita media featured plaintiff in negative publicity regarding the Williams case.

■ D. Kan. Rule 40.2 provides that "[t]he court shall not be bound by the requests for place of trial but may, upon motion by a party, or in its discretion determine the place of trial." Relevant factors include plaintiff's choice of forum, convenience of the witnesses, the relative advantages and obstacles to a fair trial and "all other considerations of a practical nature that make trial easy, expeditious and economical." *Riley v. Stormont Vail Health Care, Inc.*, No. 01–2115–CM, 2001 WL 969060 at *1 (D.Kan. Aug.13, 2001) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515–16 (10th Cir.1991)). The Court can better evaluate these factors after the parties have completed discovery and filed their final witness lists and after the Court has determined the scope of issues for trial. Consequently, the Court will overrule defendant's motion, without prejudice, as premature.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Partial Summary Judgment On Plaintiff Biglow's Claims (Doc. # 81) filed July 6, 2001 be and hereby is **SUSTAINED in part and OVERRULED in part.** The Court sustains the motion with respect to plaintiff's Title VII and KAAD claims (Counts 2, 3 and 4) and overrules the motion with respect to plaintiff's Section 1981 claims (Count 1).

**IT IS FURTHER ORDERED** that Defendant's Motion To Determine Wichita As Place Of Trial (Doc. # 112) filed August 9, 2001 be and hereby is **OVERRULED without prejudice.** Defendant may re-file

the motion, if it still believes it is warranted, after the parties have completed discovery and filed their final witness lists and after the Court has ruled on any pretrial motions which will determine the scope of the issues for trial.